HENDERSON *v.* GRUNDY COUNTY BEER COMMITTEE *et al.*

SANDERS *v.* SAME (TWO CASES).

HARGIS *et ux. v.* SAME.

(*Nashville*, December Term, 1939.)

Opinion filed June 29, 1940.

THOMAS M. LOCKHART and H. B. GARTHWAITE, both of Tracy City, for plaintiffs.

J. D. MOSBY, of Nashville, and JEFF D. FULTS, of Tracy City, for defendants.

MR. SPECIAL JUSTICE E. J. SMITH delivered the opinion of the Court.

The question to be determined in each of these cases is whether the Beer Committee of Grundy County has jurisdiction to revoke for cause, after notice and hearing, retail dealers' beer permits, issued to the respondents.

On November 3, 1939, the Tennessee Brewers and Beer Distributors Committee, and eleven citizens and residents of Grundy County, filed petitions with the beer committee against the respondents, alleging in substance that retail dealers' beer permits previously had been issued to the respondents, and that they had so conducted their places of business, commonly called road houses, as to interfere with the public health, safety, and morals, and more particularly that they had habitually sold beer to minors, had persistently violated the bone dry law of the State, had employed girls of immoral character to act as waitresses, who solicited patrons for immoral purposes, and had used their places of business for the purposes of prostitution, and had caused many of the miners who worked in the vicinity of such places to spend their weekly wages in drunken rioting and revelry, and by virtue of the lax, loose, and immoral conditions prevailing at such places many difficulties had occurred, some of them a short time prior to the filing of the petitions, in which men had been seriously cut and wounded.

On the filing of the petitions, the beer committee served

notice on each of the respondents that a hearing would be held on November 13, 1939, but prior to that date counsel for the respondents filed a motion to continue the hearing until a later date, and subsequently they filed motions to dismiss and pleas in abatement for causes which will be stated in the petitions for *certiorari* later filed in the court below.

The motions and pleas were overruled by the committee, and the respondents filed pleas of not guilty, and the causes were set for hearing on March 18, 1940.

On March 16, 1940, the respondents herein filed applications or petitions for *certiorari* and writs of *supersedeas* alleging in substance that the proceedings before the beer committee were in reality brought under Code, section 9324, *et seq.* for the abatement of an alleged nuisance, and that the beer committee had no jurisdiction to proceed and try any such cause of action, and further that the committee had no jurisdiction to revoke permits previously issued by it, except that any person making a false statement in said application shall forfeit his permit, and that as the petitions filed before the committee did not make such a charge, but were based on violations of the bone dry laws involved in the illegal sale of liquor, and the sale of beer to minors, contrary to the beer act, the committee had no jurisdiction to revoke the permits of the respondents in that the acts alleged in the petitions occurred after the issuance of the permits, and except for the one case above stated, permits issued by the beer committee of the county are irrevocable.

The court below ordered the writs of *certiorari* and *supersedeas* to issue as prayed, and they were served on the chairman and secretary of the beer committee on March 18, 1940, a short time before the hearings were scheduled to begin.

On March 30, 1940, the Chief Justice of this Court, on the application of the chairman and secretary of the beer committee, directed writs of *certiorari* and *supersedeas* to issue to the end that the holding of the court below that the beer committee had no jurisdiction in the premises might be brought here for review, and the cases are now before the court on motions by the respondents to dismiss the petitions for *certiorari* and *supersedeas* so ordered to be issued.

The "Beer Act," Chapter 69, Public Acts of 1933, as amended (Williams Annotated Code, section 1191.1 *et seq.*), as plainly appears from its caption and body, is dual in character, in that it is (1) a police power measure, and (2) a revenue measure.

As a police power measure sections 9a, 9b, 9d, and 10 prescribe the conditions on which county courts or committees, appointed by such courts, or boards appointed by municipalities, are authorized to issue beer permits.

Three of the conditions, so prescribed, relevant here, are that the dealer will not conduct his business contrary to the public safety, health or morals, sell intoxicating liquors in violation of the laws of the State, or sell beer to minors.

It has been held that the sections above cited confer discretionary powers on county courts, or their beer committees, (*State ex rel. Cravens* v. *Delk et al.*, 175 Tenn., 614, 136 S. W. (2d), 524), and it is manifest that as the powers conferred on such agencies concededly fall within the proper exercise of the police power, in this case beer, such powers are continuing, supervisory powers, and are not spent and exhausted when the permit is issued, leaving the agency helpless to revoke the permit for any cause or conduct, however serious, on the part of the licensee.

Such a contention is contrary to settled principles of legal construction, and must not be accepted unless the context of the statute under consideration imperatively requires.

▊ It is clear that the petitions filed before the beer committee in the instant cases are not in any sense related to or brought under Code, section 9324 *et seq.*, and therefore the only question here is whether the beer committee, had it proceeded to a hearing of the applications filed before it, would have acted beyond its jurisdiction, and deprived the respondents of alleged vested property rights.

▊ It is everywhere agreed that a permit to engage in the manufacture or sale of beer, or other intoxicating liquors, is in the nature of a mere permit which creates no vested or property rights, and the traffic is at all times subject to the control of the State, or by delegation of power to its political subdivisions, such as counties or municipalities, in the exercise of the police power.

▊▊ It, therefore follows that the State may at any time revoke such licenses, or permits, whenever it deems it advisable for the public welfare, and the revocation of a license is not for punishment, but because by violation of the conditions under which the license was issued, the licensee shows that he is not a proper person to hold it, and therefore such a revocation does not oust the jurisdiction of the courts to inflict fines or terms of imprisonment on the person to whom the license has been issued, and who has violated the law by its misuse. Joyce Intoxicating Liquors (1910), section 303.

▊ Applying these settled principles, the statute required that the beer committee before issuing permits to the respondents should exact from them promises to comply with the conditions prescribed by the above cited

sections of the statute, and the power to revoke the permit for violation of any of the conditions on which it was issued was incidental to the power to grant the permit, 33 C. J., 563, or as Chief Justice Green, in the memorandum opinion filed when he ordered the writs in the pending cases to issue, stated: ''Since the licensing authority may withhold a permit in the first instance, it naturally follows that when the permit is issued on conditions, and those conditions are breached, the licensing authority may withdraw the permit.''

And in the same opinion, referring to *Richmond* v. *State,* 171 Tenn., 1, 100 S. W. (2d), 1, he said: ''Nothing was said in that case about the power of the county court, or its beer committee, to revoke a beer dealers' license.''

In *Wright* v. *State,* 171 Tenn., 628, 106 S. W. (2d), 866, the statute under consideration was fully and carefully analyzed, and the conclusion reached that a county court or its beer committee had authority to revoke permits for violation of conditions attached to their issuance, but that it could not prescribe added conditions, or regulations, as the later power was conferred expressly on municipalities by section 10 of the Act.

While it is true that what was said in the case just cited was a *dictum,* nevertheless we are persuaded that the court correctly construed the statute with reference to the power of county courts, or their committees, to revoke permits for cause, and after notice and hearing.

It may be added that this conclusion accords with the views expressed by Chief Justice Green in ordering the writs to issue in the instant cases.

It results that the motions of the respondents to dismiss the petitions for *certiorari,* and to discharge the writs of ancillary *supersedeas* heretofore ordered to be issued by this Court, are denied, the judgments of the

court below granting the writs of *certiorari* and *super-sedeas*, at the instance of the respondents, are reversed, and the beer committee of Grundy County is hereby declared to have authority to proceed with the hearings of the petitions filed with it on November 3, 1939, and, if material and relevant evidence is adduced before it in support of such charges, to revoke the retail dealers' beer permits issued by it to the respondents.

The respondents will pay the costs of the appeal.